STATISTICAL TABULATING CORPORATION, Appellant,

v.

Bob BULLOCK, Comptroller of Public Accounts, Appellee.

No. 12416.

Court of Civil Appeals of Texas, Austin.

June 16, 1976.

Rehearing Denied July 7, 1976.

Donald F. Nobles, Austin, for appellant.

John L. Hill, Atty. Gen. of Texas, Gilbert J. Bernal, Jr., Asst. Atty. Gen., Austin, for appellee.

O'QUINN, Justice.

Statistical Tabulating Corporation brought this suit in June of 1974 to recover in excess of $20,000 in taxes resulting from a deficiency determination by the Comptroller of Public Accounts.[1]

After trial before the district court without a jury, the court entered judgment that Statistical Tabulating take nothing by its suit. We will reverse the judgment of the trial court and render judgment that Statistical Tabulating Corporation recover its taxes paid to the State.

The essential facts in this case are that appellant is engaged in a business in the course of which customers bring data related to the customer's business which appellant translates, by means of "key punch machines," into a form, on cards supplied by appellant, adapted to further clarification by computers so that the customer may singly, or repetitively, print out the information for ultimate use. The only materials furnished by Statistical Tabulating are the cards punched to reflect the data supplied by the customer. A sales tax is paid by Statistical Tabulating on the card forms used in this process.

The Comptroller takes the position that a "sales tax" is due on the entire process, and denies that the punching of the cards, from data supplied by the customer, is a "service rendered" within the terms of the "Sales, Excise and Use Tax" (Articles 20.01 et seq., V.A.T.S., Taxation-General, ch. 20, Vol. 20A).

The statute does not levy a tax on services. To impose the tax under the facts of this case it is necessary to say that the transactions under examination fall within the definition of a "sale" as found in the statute. Article 20.01(K)(2)(a) defines "sale" as, "The producing, fabrication, *processing*, printing or imprinting of tangible personal property for a consideration for *consumers who furnish*, either directly or indirectly, the *materials* used in the producing, fabricating, *processing*, printing, or imprinting." (Emphasis added)

The parties come to issue on the word "processing," as used in the statute, and the State insists that the *process*, coupled with the cards used and furnished by Statistical Tabulating, amounts to a sale, as opposed to the furnishing of a service, which is not taxable. The so-called *materials* "used in" the *processing* are furnished *directly* by the customer in the form of data.

Under the facts of this case the customer does not furnish *materials* in the nature of tangible things. The "materials" furnished are data, information, statistics, which are *intangible* products of accounting, research, or records. The basic definition of *material* is "pertaining to, or consisting of, matter; corporeal; physical; not spiritual . ." (Webster: *International Dictionary of the English Language,* 2nd Ed., unabridged). The word *material* stems directly from Latin *materia* : "stuff, matter, materials of which any thing is composed; so the wood of a tree; timber for building . . ." (Lewis & Short: *A Latin Dictionary,* Oxford University Press, 1975). We are aware

---

1. Comptroller: pronounced *kontroler*, originally an erroneous spelling of *controller*, after F. *compte*, account; defined as public officer whose duty is to supervise accounts and determine propriety of expenditures; a *controller*. See Webster: *New International Dictionary of the English Language*, 2nd Ed., unabridged.

of a secondary, evolved and derivative meaning, which includes "data . . . such as notes, documents, sketches, etc., which may be *worked up into a more finished form* ; as materials for a biography . . . ." (Emphasis added) (Webster, *supra* ). There is no working up "into a more finished form" under the facts of this case, only a mechanical transference of data, requiring no alteration of interpretation, to machine cards suitable for use in computers.

The tax statute under examination undertakes to levy a tax upon the sale of "tangible personal property" only (Art. 20.-01(K)(2)(a), (b), (d), (e)), and "furnishing, preparing or serving for a consideration of food, meals, or drinks." (Art. 20.-01(K)(2)(c)). It is noted that the only variance from a tax upon sale of "tangible personal property" is to tax the furnishing, servicing, and sale of tangible "food, meals, or drinks." It may not be assumed or implied that the Legislature intended also to tax intangible data as *materials* furnished by a customer wanting the data transferred to cards suitable for computer calculations or recording. The Legislature made it clear that the tax should fall only on "tangible personal property." In Article 20.01(W) " 'Taxable Items' means tangible personal property," and Article 20.01(P) defines the term: " 'Tangible Personal Property' means personal property which may be seen, weighed, measured, felt or touched, or which is in any other manner perceptible to the senses."

■ It is settled that in construing a tax statute, where the question is whether the person or entity sought to be taxed comes within the statutory provision imposing the tax, ". . . the statute must be construed strictly against the taxing authority and liberally in favor of the person [or entity] sought to be held." *Texas Unemployment Compensation Commission v. Bass,* 137 Tex. 1, 151 S.W.2d 567, 570 (1941); *State v. Praetorians,* 143 Tex. 565, 186 S.W.2d 973, 976 (Tex.Comm'n App.1945, opinion adopted); *State v. Kenyon,* 153 S.W.2d 195, 199 (Tex.Civ.App. Austin 1941,

writ ref.); *Wilson Communications, Inc. v. Calvert,* 450 S.W.2d 842, 844 (Tex.1970).

In applying the rule of these cases, if there is doubt under terms of the statute that Statistical Tabulating should come within the sales tax with its type of operation demonstrated by the record, the doubt must be resolved against the Comptroller and in favor of the taxpayer appellant.

■ We conclude that the statute so plainly levels the tax upon things corporeal, "tangible personal property," as to require the construction that the Legislature did not intend to tax the processing operations performed by Statistical Tabulating, and we so hold. We find this conclusion reasonably supported in principle by earlier decisions of this Court involving the rendition of services as opposed to sale of tangible personal property. *Calvert v. Julian Gold, Inc.,* 479 S.W.2d 328 (Tex.Civ.App. Austin 1972, writ ref. n.r.e.); *Williams & Lee Scouting Service, Inc. v. Calvert,* 452 S.W.2d 789 (Tex.Civ.App. Austin 1970, writ ref.).

The precise question presented under the facts of this case we do not find considered or passed on in other decisions by courts in this state. We have examined numerous authorities in other jurisdictions, and have found the reasoning and conclusions of certain of these cases, in which the facts are similar, support the conclusions we have reached.

In *A. B. C. Electrotype Co. v. Ames,* 364 Ill. 360, 4 N.E.2d 476 (1936), the unit sought to be taxed made electrotype, stereotypes, and matrices for customers who furnished the type or patterns to be transformed to the matrices or types. The court reasoned that the small quantity of tangible material used in the operation was destroyed, or had no further value, after the processing, except to the customer who ordered the reproduction. "What the customer really pays for is the skill, labor, and use of the machinery and equipment of the electrotyper." The court concluded that the electrotyper was engaged in furnishing skill, labor and use of machinery and "not in the sale of tangible personal property."

Similarly, in *Washington Printing and Binding Co. v. State,* 192 Wash. 448, 73 P.2d 1326 (1937), the court reasoned that the printer of tariffs, compiled by the railroad customer, furnished only paper, ink, skill, and machinery, but did not sell the paper and ink within the tax statute, but instead performed a service.

Other such cases include *H. G. Adair Printing Co. v. Ames,* 364 Ill. 342, 4 N.E.2d 481 (1936); *J. A. Burgess Co. v. Ames,* 359 Ill. 427, 194 N.E. 565 (1935); *State of Alabama v. Natco Corp.,* 265 Ala. 184, 90 So.2d 385 (1956); *Central Lith. & Eng. Co. v. Moore,* 75 Wis. 170, 43 N.W. 1124 (1889), in each of which it was held that services had been sold and not tangible goods.

Although there are decisions in cases from other jurisdictions not in accord with the views we have expressed, we consider them distinguishable either because of differences in the tax statutes or on the facts, and regard them as not persuasive.

For the reasons stated in this opinion, we reverse the judgment of the trial court and render judgment that appellant recover the taxes paid with interest as provided by law.

Reversed and Rendered.